68

PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. GABRIEL RAMOS, Defendant and Appellant.

No. 4541.   Argued January 22, 1932.—Decided February 2, 1932.

L. Tormes for appellant.   R. A. Gómez, Fiscal, for appellee.

MR. JUSTICE ALDREY delivered the opinion of the Court.

Gabriel Ramos was charged with involuntary manslaughter, in that on a certain day and while driving an automobile

negligently and carelessly, he ran over Francisca María Plana Luciano, a female child, causing her such injuries that she died immediately. It was averred that such negligence and carelessness consisted in driving the automobile without sounding either a klaxon or horn and at an excessive speed along the left, instead of along the right side of the road which leads from Guayama to Ponce, and without reducing such speed. He was convicted of the aforesaid offense by a jury and sentenced by the District Court of Ponce to six months in the penitentiary at hard labor.

In the appeal taken by him from the refusal of a new trial and from the judgment rendered, he assigns the commission of three errors which he reduces to one, namely, the insufficiency of the evidence to support a conviction.

Not all automobile accidents in which a person is injured or killed necessarily involve the guilt of the driver of the vehicle. Such an occurrence is not by itself evidence of his guilt, nor does it make it necessary for the driver to establish his innocence. For a person to be convicted and deprived of his liberty, it must be shown that the accident was due to some guilty act on his part or to his negligence or carelessness in complying with the regulations established for the safety of pedestrians or of other vehicles, since every defendant is presumed by law to be innocent until his guilt is established beyond a reasonable doubt. Unavoidable or unfortunate accidents occur which produce no liability, as not being caused by any fault or negligence.

Ordinarily we do not disturb the findings or verdict of a jury convicting a defendant, especially as regards the credibility of the witnesses; but we can, as an appellate court, determine whether there was manifest error in the weighing of the evidence, or whether the latter is of such a nature that it does not justify the verdict or is insufficient to sustain a judgment of conviction.

Bearing in mind these considerations, we will examine the evidence introduced in the case at bar in order to deter-

mine whether, as claimed by the appellant, the same is insufficient to sustain the verdict of the jury finding him guilty of involuntary manslaughter, upon which he has been sentenced to serve a term in the penitentiary at hard labor.

Only one of the witnesses for the prosecution, Ramón Villa, was present when the facts occurred, as the other witnesses introduced did not see the accident, since Ignacio Echevarría and policemen Antonio S. Fantauzzi and Ramón Portel arrived at the place of the accident after the girl had been run over by the car. Other witnesses, like Juana Luciano, the girl's mother, and María Mercado were at some distance from the child and from another girl walking behind them, and they only saw that the appellant's car was going fast.

From the testimony as a whole the unassailable conclusion is reached that between noon and one o'clock on May 16, 1930, Juana Luciano and María Mercado, followed at some distance by the deceased and another girl, were walking along the public road leading from Ponce to Santa Isabel, Salinas and Guayama, keeping to the right-hand side of the road, which is the southern side thereof, en route to Santa Isabel; that going in the same direction an automobile, from which printed advertisements were being thrown out, passed the women and the girls; that at the same time and going in the opposite direction, towards Ponce, the appellant was driving a car keeping to his right on the north side of the road; and that at that place the road is straight and there are no curves. What happened then is described by Ramón Villa, one of the witnesses, the revelant part of whose testimony reads as follows:

"Q.—Please explain.

"A.—Well, while working by the side of the road leading to Santa Isabel, I saw coming this woman, two women with two girls, the two women in front and the two girls some distance behind, and a car passed coming from Ponce towards Santa Isabel.

"Q.—What was the car doing?

"A.—Throwing out programs.

"Q.—Proceed.

"A.—And it went on, and then another car came up.

"Q.—Where from?

"A.—As from Salinas.

"Q.—In the opposite direction to the car going from Ponce towards Santa Isabel?

"A.—Yes. And then the girl who was keeping to her right saw a program and crossed over to the right of the approaching car to pick up the program, and then the driver of the approaching car. . . .

"Q.—At what speed was that car coming?

"A.—Fairly fast.

"Q.—How?

"A.—Rather fast.

"Q.—At a fairly or excessive speed?

"A.—Rather fast, not very fast.

"Defendant.—I move that that be stricken out. No leading questions should be asked.

"Judge.—Let it be stricken out.

"District Attorney:

"Q.—Explain what you mean by rather fast (*bastante ligero*).

"A.—Fast. When the girl picked up the program she came this way, to the other side, and the car swerved to the left on my side, and then struck the child as the child. . . .

"Q.—The car then swerved?

"A.—Swerved from the right side towards the other right side, towards the other left side.

"Q.—And did it pass over the place where the child stood?

"A.—The child stood to the right.

"Q.—And did it strike her there?

"A.—The car swerved to the right. I can not tell whether it did so to save her. The child then ran towards the left.

"Q.—Was then the child struck on the right-hand side, while going?

"A.—She was caught on the left-hand side.

"Q.—Going towards Santa Isabel?

"A.—She was caught this side on the left, going to Santa Isabel.

"Q.—And where did it leave her?

"A.—It left her on the same place.

"Q.—Are you sure of that?

"A.—It left her there.

From the above testimony it is concluded that when the appellant was nearing the place where the women and the girls were walking, one of the latter crossed over to the other side of the road in order to pick up an advertisement, along which side the appellant was driving his car keeping to his right, and that he caused his car to swerve towards the left where the said child was run over because she had returned to where she stood before. The inference from such testimony is that when the girl crossed the road to the side along which appellant was driving his car, the latter drove to his left, probably to avoid running over the girl, as he told a policeman shortly after the accident, and that as the girl turned back to the side along which she was going before and towards which the car had swerved, the accident occurred as she reached that place.

In view of the facts as related by the witness Villa and of the inferences therefrom, the conclusion must be reached that the death of the child was the result of an unfortunate accident for which no liability attaches to the appellant who tried to avoid the accident by driving his car towards the left when the girl crossed over to the right-hand side of the road where he was; and that the unexpected return of the child to the side of the road where she was before was the cause of her death. The facts in the case of *Aguayo* v. *Municipality of San Juan*, 35 P.R.R. 390, are similar to those in the case at bar.

As constituting negligence and carelessness, resulting in the death of the child, the appellant is charged in the information with the failure to sound either a klaxon or horn and with driving at an excessive speed along the left side of the road, instead of keeping to his right, and without reducing such speed. However, the evidence shows that he was traveling along the right side and that he swerved to the left when the child crossed to the side occupied by him; that he slowed down by applying the brakes as shown by the

tracks left by the tires on the road. It is true that it was proved that such tracks started twenty meters behind the place where the child lay and ended some twenty meters beyond such place, but neither was it charged against him that the accident was due to a defect in the brakes, nor was it shown that the fact of going such distance after applying the brakes was evidence that the same were defective or that he could have stopped at a shorter distance. As regards the speed, the only thing established is that he was driving fast along a straight stretch of road, and that on the opposite side to that where the automobile traveled there were going only two women and the girls. Automobiles may be driven along the public roads at any speed which may be desired, provided the same is compatible with the safety of life and property, except that if an accident occurs while going at more than 48 kilometers per hour, such speed constitutes *prima facie* evidence that the vehicle was being driven without due care, according to the specific provisions of subdivision (*a*), section 13 of Act No. 75 of 1916 (Session Laws, p. 148). In *People* v. *Rodríguez,* 40 P.R.R. 11, and *People* v. *Casanovas,* 38 P.R.R. 197, we have held that the mere fact of driving a car on the public highway at more than 48 kilometers per hour does not in itself constitute an offense. As to the failure to sound a klaxon or horn, the law only requires the giving of such warning on passing pedestrians or other vehicles and while rounding a curve, none of which circumstances are present in the instant case. The evidence for the defendant failed to show any negligent or careless act on the part of the appellant.

It is regrettable that unfortunate accidents like the one involved in the present appeal should occur, but automobile drivers are not always responsible therefor.

The judgment appealed from must be reversed and the appellant discharged.